**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | |
|---|---|
| **Jassid Tillman** | |
| *Plaintiff*, | Case No.  20-cv-61752 |
| v. | |
| **Chex Systems, Inc.,** **Pro Style Servicing, LLC,** *and* **Paul Anthony Pellizzon,** | Ad Damnum: **$7,000 plus Fees & Costs** |
| | **JURY TRIAL DEMANDED** |
| *Defendant*s. | |

## COMPLAINT & JURY TRIAL DEMAND

COMES NOW the Plaintiff, **Jassid Tillman** ("**Mr. Tillman**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **Chex Systems, Inc.** ("**Chex Systems**"), **Pro Style Servicing, LLC** ("**Pro Style**"), and **Paul Anthony Pellizzon** ("**Pellizzon**") (collectively, "**Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action brought by Mr. Tillman against the Defendants for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et. seq.* ("**FCRA**").

## JURISDICTION AND VENUE

2. Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331, as the FCRA is a federal statute.

3. The Defendants are subject to the provisions of the FCRA and to the jurisdiction of this Court pursuant to Section 48.193, Florida Statutes and Fed. R. Civ. P. 4(k).

4.      Venue is proper in the Southern District of Florida, pursuant to 28 U.S.C. §1391(b)(2), because the events giving rise to this cause of action were caused by the Defendants and occurred within this District.

## PARTIES

### Mr. Tillman

5.      **Mr. Tillman** is a natural person residing in Coral Springs, Florida, and a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

### Pro Style

6.      **Pro Style** is a Delaware corporation with a primary business address of **25255 Cabot Rd., Suite 207, Laguna Hills, CA 92653.**

7.      The California registered agent for Pro Style is **Corporation Service Company, 2710 Gateway Oaks Dr., Suite 150N, Sacramento, CA 95833.**

### Pellizzon

8.      Pellizzon is a natural person who resides at **27071 Green Hills Ln., Laguna Hills, CA 92653.**

9.      Pellizzon is an entrepreneur with many business holdings. He is the sole owner of Center Ice Servicing, LLC ("**Center Ice**") and Pro Style, which in turn owned and operated the internet payday loan website "The Cash Fairy" (www.cashfairy.com).

**<u>Chex Systems</u>**

10.     **Chex Systems** is a Minnesota corporation with a primary business address of **601 Riverside Ave., Jacksonville, FL 32204.**

11.     Chex Systems is registered to conduct business in the State of Florida, where its Registered Agent is **CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324**.

12.     Chex Systems is a nationwide *Consumer Credit Reporting Agency* ("**CRA**") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, or on a cooperative nonprofit basis, it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

**<u>FACTUAL ALLEGATIONS</u>**

**<u>Pellizzon's Usurious Lending via "Tribally" Owned Cash Fairy</u>**

13.     www.cashfairy.com was an online payday loan website which made loans to consumers at interest rates in excess of 700% annually.

14.     The website contained a cartoon, winged fairy with a scepter and money bag delivering cash with the tag line, "getting cash shouldn't be like pulling teeth": **SEE PLAINTIFF'S EXHIBIT A.**

15.     Section 687.071, Florida Statutes, renders loans made with annual interest rates greater than 45% a felony.

16.     Section 687.071(7), Florida Statutes states: "No extension of credit made in violation of any of the provisions of this section shall be an enforceable debt in the courts of this state."

17.     Any person who willfully makes such a loan, in addition to criminal sanctions, forfeits the right to collect payment for the loan, as such loans are "void as against the public policy of the state as established by its Legislature." *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935). *See also Pushee v. Johnson*, 123 Fla. 305, 166 So. 847 (1936); *Stubblefield v. Dunlap*, 148 Fla. 401, 4 So.2d 519 (1941); *River Hills, Inc. v. Edwards*, 190 So.2d 415 (Fla. 2d DCA 1966); *Rollins v. Odom*, 519 So. 2d 652, 655 (Fla. Dist. Ct. App. 1988).

18.     Payday loans made by The Cash Fairly, which charged a minimum of 700% annual interest, are thus **illegal and unenforceable** in the State of Florida.

19.     The Cash Fairy website noted:

"…Clearwater Lending, LLC d/b/a/ CashFairy.com is a Tribal enterprise and economic arm, wholly owned and operated by the Ft. Belknap Indian Community ("Tribe"), a federally-recognized sovereign American Indian Tribe, and created by the Tribal Council for the benefit of the Tribe." ***Id.***

20.     News segments mentioning the Cash Fairy appeared on the cable network MSNBC, as well as in other print, online, and television outlets. Nearly all coverage highlighted its 700% annual interest rates.

21.     On August 10, 2014, the HBO show *Last Week Tonight With John Oliver* devoted its show to predatory lending and apportioned special focus on The Cash Fairy.

22.     The Cash Fairy also caught the attention of state regulators.

23. The Washington Department of Financial Institutions issued a consumer alert in March 2013, warning consumers that "Clearwater Lending LLC (Cash Fairy)" was not licensed to lend in Washington charged excessive fees and interest.

24. Around 2018, due to media coverage and the resulting increased investigations by numerous state regulatory authorities, the Cash Fairy terminated operations.

25. Pellizzon still operates other online payday lenders using similar "rent-a-tribe" schemes.

**Cash Fairy Controlled and Operated by Pellazzon**

26. Pellazzon is a serial entrepreneur who owns dozens of different companies.

27. While some of these entities have discernable business activities, the vast majority of them have no physical office or retail space, no website, and no phone number.

28. Pellazzon apparently has an affinity for the word "clear," which appears a disproportionately high number of times in corporations under his control: Clear Ontario LLC, Clear Pacific LLC, Clear Capital LLC, Clear Payroll Solutions LLC, Clear Payroll Management LLC, etc.

29. True to form, the "tribal" entity controlling the Cash Fairy was Clearwater Funding LLC.

30. Records from the Better Business Bureau ("**BBB**") for Cash Fairy list Pellizzon as a "company contact."

31. Loan servicing, originating, underwriting, and collection was performed in part through the Pellizzon-owned **Center Ice Servicing LLC**, which operated at 20726 Stone Oak Parkway, Unit 102, San Antonio, TX 78258.

32. Center Ice was incorporated in Delaware and registered with the Texas Secretary of State under taxpayer number 32067726359.

33. Loan servicing, originating, underwriting, and collection was also performed by Pro Style, whose offices were also located in the San Antonio area.

34. The two entities were essentially alter-egos of each other.

35. Both Pro Style and Center Ice existed to underwrite, service and collect on online payday loans.

36. The SMS short code "91975" used to market Cash Fairy payday loans was registered *jointly* to Center Ice and Pro Style.

37. An employment ad posted on Ziprecruiter.com by Pro Style in late 2019 or early 2020 for a "call center representative" described the job, which paid $12.50 to $15 per hour, with duties primarily including "respond(ing) to client loan inquires received in the Call Center." **SEE PLAINTIFF'S EXHIBIT B.**

38. The job entailed both inbound and outbound calls and stated the job involved "track(ing) loans appropriately." **Id.**

39. Pellizzon and Pro Style frequently obtained credit reports on consumers from Clarity Services, Inc. ("**Clarity**"), a Clearwater, Florida-based CRA which primarily caters to the needs to the online payday lending industry.

40. Upon request, Clarity will obtain supplemental information from larger, nationwide CRAs, like Experian Information Solutions ("**Experian**").

41. Records of inquiries logged by Experian show reports requested by "CNTR ICE/CASHFAI," presumably Center Ice/Cash Fairy, as well as "CNTR ICE CASHFAIRY."

42. The address associated with the inquiries was 20726 Stone Oak Parkway, Unit 102, San Antonio, TX 78258, where Center Ice is registered. **SEE PLAINTIFF'S EXHIBIT C.**

<u>**Pellizzon and Pro Style Obtain CBRs Without Permissible Purpose**</u>

43. On January 31, 2017, Pro Style, as Center Ice/Cash Fairy, requested a *Credit Bureau Report* ("**CBR**") from Chex Systems regarding Mr. Tillman.

44. Chex Systems recorded the request for Mr. Tillman's CBR as a "hard" inquiry, *i.e.*, an inquiry which becomes part of the consumer's credit report, is included in reports provided to other lenders about the consumer, and which is detrimental to the consumer's credit score.

45. Mr. Tillman first discovered the inquiry upon reviewing his January 20, 2020 consumer disclosure from FactorTrust, which incorporated a credit report from ChexSystems dated February 7, 2017.

46. Center Ice/Pro Style certified to Chex Systems that Center Ice/Cash Fairy were the end users of the report, *i.e.*, Center Ice/Cash Fairy had a permissible purpose to obtain the report because Mr. Tillman had initiated a request for credit or some other business transaction directly with Center Ice/Cash Fairy**.**

47.     As aforementioned, Cash Fairy claimed to be owned by Clearwater Lending LLC and not Center Ice, Pro Style, or Pellizzon.

48.     Pursuant to the FCRA, 15 U.S.C. § 1681b(f), any person requesting a CBR must have a *permissible purpose* for obtaining it.

49.     Mr. Tillman did not apply for a loan or to transact business with Clearwater Lending LLC, Center Ice, Pro Style, or Pellizzon, nor did he consent to a credit report being obtained regarding him.

50.     On information and belief, Pro Style and Pellizzon, obtained Mr. Tillman's CBR after it purchased his basic personal information – e.g. name, address, date of birth, employer, banking information, etc. – from an online payday loan lead generator.

51.     Many of these lead generators use misleading and false statements to hoodwink unsuspecting consumers into providing personal information about themselves. These lead generators then re-sell the information to illegally operating online payday lenders who then seek to qualify their new "leads" by obtaining highly detailed credit reports on the consumer.

52.     The CFPB has brought complaints against a number of "lead generators" who have duped consumers into providing personal information about themselves, then re-sold these leads to online payday lenders that they knew were operating illegally. *See e.g. In the Matter of Zero Parallel,* 2017-CFPB-0017

53.     By way of example, Zero Parallel, LLC, ran an affiliate program in which independent website operators funneled leads to it. Zero Parallel paid between $2 and

$220 per lead, reselling these leads to a multitude of online loan sharks, most of whom claim sham tribal affiliations.

54.     Pro Style and Pellizzon also bought leads from ITMedia, LLC ("**ITMedia**"), a Santa Monica, California lead generator and re-seller.

55.     The owner of ITMedia, Daniel Negari, runs a plethora of lead-generation websites which use highly questionable tactics.

56.     One recent example was Negari's SBA.com, which attempts to mimic the legitimate SBA.gov operated by the Small Business Administration.

57.     The Federal Trade Commission ("**FTC**") and the real SBA sent a warning letter to ITMedia on May 14, 2020, expressing concern that SBA.com was receiving commissions and making profit from referrals to lenders who supposedly could "process" small-business Paycheck Protection Program ("PPP") loans.

58.     ITMedia     operates     personalloans.com,     badcreditloans.com, signatureloans.com, and many others.

59.     In 2016, the FTC filed enforcement action in the Central District of California against ITMedia regarding its failure to respond to the FTC's investigative demands. The FTC was investigating ITMedia regarding what it believed was questionable methods in obtaining leads regarding consumers seeking online payday loans. *Federal Trade Commission vs. IT Media Inc.*, case 2:16-cv-09483-CAS-MRW, Central District of California, Western Division, Dec. 22, 2016.

60.     Once the leads are purchased from an online lead generator, online payday lenders like Pro Style and Pellizzon use sophisticated predictive algorithms to determine which consumers are likely to make loan payments but may be financially distressed.

61.     Pro Style and Pellizzon thus obtained Mr. Tillman's CBR for *marketing purposes*, to see if he would qualify as a promising target for one of the Cash Fairy's predatory loans.

62.     By improperly obtaining Mr. Tillman's credit report information, the Defendants can evaluate if he is financially stress enough to consider a 700% APR loan while still be able to pay some, or all, of it back.

63.     Pro Style and Pellizzon thus lacked a permissible purpose to obtain a CBR regarding Mr. Tillman from ChexSystems.

64.     Mr. Tillman's ChexSystems report was obtained by an automated, computerized process which pulled Mr. Tillman's credit report and then analyzed its contents.

65.     However, Pellizzon was the individual who created, implemented, and authorized the automated procedures which resulted in Mr. Tillman's report being obtained illegally.

66.     On January 31, 2017, Pro Style and Pellizzon and also obtained a CBR from Clarity. Clarity then obtained supplemental information from Experian, who recorded a record of the inquiry. **SEE PLAINTIFF'S EXHIBIT C.**

67.     Mr. Tillman discovered the inquiry on October 18, 2018, after reviewing his Experian consumer disclosure.

68.     The inquiry indicated the report was obtained by "CNTR ICE/CASHFAI," 20726 Stone Oak Parkway Unit 102, San Antonio, TX 78258. *Id.*

69.     For the same reasons as aforementioned, Pro Style and Pellizzon had no permissible purpose to obtain a CBR from Clarity, either.

70.     Clarity recorded the inquiry as a "hard" inquiry, e.g., one which negatively impacted Mr. Tillman's credit scores.

### Chex Systems Fails to Verify the Identity of Cash Fairy

71.     Prior to providing reports to "CNTR ICE/CASHFAIRY," ChexSystems, as a CRA, was required by the FCRA to "make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report." *See* 15 U.S.C. § 1681e(a).

72.     The FCRA does not define the phrases "reasonable efforts" or "reasonable procedures," but the FTC interprets them to require an agency "to verify that [each user] is . . . **a legitimate business** having a 'permissible purpose' for the information reported." *Aleksic v. Clarity Servs., Inc.*, Case No: 1:13-cv-07802 (N.D. Ill. Jul. 8, 2015), quoting *Commentary on the Fair Credit Reporting Act*, § 607(b)(2)(A), 55 Fed. Reg. 18,804-01 at 18,819 (May 4, 1990).  (**Emphasis added.)**

73.     Beyond this, the FCRA imposes a duty of reasonable care on a CRA. *See Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509, 513 (5th Cir. 1982).

74.     ChexSystems failed to make a reasonable effort to verify the identity of "Cash Fairy" as required by FCRA § 1681e(a).

75. Had ChexSystems made a reasonable attempt to verify the identity of "CNTR ICE/CASHFAIRY" it would have quickly realized that the entity it was selling reports to is an online payday lender claiming to be owned by the Fort Belknap Tribe in Montana. Despite "tribal" ownership, even though the address provided was in a commercial office park in San Antonio, Texas.

76. Had ChexSystems made a reasonable attempt to verify the identity of "CNTR ICE/CASHFAIRY" it would have discovered that Center Ice had no website, no published phone number, and, upon information and belief, provided no phone number to ChexSystems.

77. Even the nomenclature used – "CNTR ICE/CASHFAIRY" – suggests that Center Ice and Cash Fairy are *one in the same,* something ChexSystems would have seen was quickly refuted with even a cursory glance at cashfairy.com.

78. Despite painfully obvious and numerous red flags practically telegraphing "CNTR ICE/CASHFAIRY" were not who they claimed to be, ChexSystems provided them access to its database of millions of American consumer's credit reports – including Mr. Tillman's.

### Sea Mirror, Inc. / Green Stream

79. On January 31, 2017, ChexSystems also sold a report to "SEA MRR/GREEN STREAM." **SEE PLAINTIFF'S EXHIBIT C.**

80. "SEA MRR" is an abbreviation for Sea Mirror, Inc., owned by Takehisa Naito ("Naito"), a veteran online payday lender who made numerous rent-a-tribe deals to obfuscate his ownership of his illegal lending businesses.

81. One such business was Green Stream Lending, which operated from greenstreamlending.com and made loans at interest rates in excess of 500% annually. It was purportedly owned by the La Posta Band of Mission Indians in Boulevard, California.

82. Naito provided an address of **1150 S Olive St Los Angeles, CA 90015** to ChexSystems, claiming his business operated from this location. Naito provided no suite or office number.

83. This address is a 42-floor, 548,000-square-foot skyscraper in Los Angeles known as the AT&T Center which contains hundreds of different businesses.

84. Naito simply rented a $95 a month "virtual office" from VizLine Virtual Offices, which provides a physical mailing address and mail forwarding services in exchange for its monthly fee.

85. Moreover, Sea Mirror, Inc. was simply a shell company which had no employees, no website, no phone number, and conducted no discernible business at all. It was one of many other shell companies owned by Naito to whom ChexSystems sold credit reports to, including Camel Coins, Inc. – another entity with no employees, no website, no phone number, and conducted no discernible business.

86. Naito lives in Las Vegas, Nevada and operates his businesses from a central location on Convention Center Drive in Las Vegas.

87. No nexus between Green Stream Lending. a "tribally" owned entity operating on an Indian reservation 180 miles southeast of Los Angeles. and Sea Mirror, Inc. exists.

88. ChexSystems could not have reasonably verified the identity of "SEA MRR/GREEN STREAM" - nomenclature which suggests the two entities are alter egos of each other or closely related.

89. The address provided was a 42-story skyscraper with no office number and was simply a cheap, rented virtual office where no business was conducted. No phone number was provided. Sea Mirror, Inc. had no website, no employees, and no listed phone number. Green Stream was, per its website, "tribally" owned by the La Posta Band of Mission Indians and made zero reference to "Sea Mirror, Inc."

90. Again, despite painfully obvious and numerous red flags practically telegraphing "SEA MRR/GREEN STREAM" were not who it/they claimed to be, ChexSystems provided it/them access to its database of millions of American consumer's credit reports – including Mr. Tillman's.

91. Naito/Sea Mirror/Green Stream purchased Mr. Tillman's personal information from a online lead generator like Pro Style/Pellizzon.

92. At no point did Mr. Tillman consent to Naito/Sea Mirror/Green Stream obtaining a credit report concerning him. Naito/Sea Mirror/Green Stream obtained Mr. Tillman's report from ChexSystems without any permissible purpose.

93. ChexSystems had no reasonable basis to believe that "SEA MRR/GREEN STREAM" would only use the information in the report ChexSystems sold for the purposes certified. "SEA MRR/GREEN STREAM" – e.g. Naito and his related companies – intended to use the report for marketing and pre-screening purposes, having purchased Mr. Tillman's information from an online lead generator.

94.     Naito, through other entities, controlled the "tribal" Green Stream Lending business. ChexSystems would have no basis to believe "SEA MRR/GREEN STREAM" in Los Angeles would need a credit report to evaluate Mr. Tillman for a consumer loan.

95.     On May 11, 2020, the FTC filed a complaint against Green Stream Lending, Sea Mirror Inc., La Posta Tribal Lending Enterprise, Takehisa Naito, and others, for allegedly operating a payday lending operation that violated the Telemarketing Sales Rule, Truth in Lending Act and Regulation Z, Electronic Funds Transfer Act and Regulation E, claiming these entities defrauded consumers of millions of dollars. See https://www.ftc.gov/news-events/press-releases/2020/05/ftc-halts-deceptive-payday-lender-took-millions-consumers.

### Chex Systems Sold Reports With Erroneous Information

96.     Chex Systems recorded the Sea Mirror and Cash Fairy inquiries as "hard" inquiries and included it in reports it sold to third parties, including FactorTrust, Inc., who then resold this data to many other lenders.

97.     Each and every person obtaining Mr. Tillman's FactorTrust or Chex Systems report would be led to believe that he had applied for a loan with Sea Mirror and Cash Fairy, when he had not.

98.     The inclusion of non-consumer-initiated, promotional inquiries is evidence that Chex Systems failed to follow reasonable procedures to assure the maximum possible accuracy of the reports it sold, since it could only include a record of inquiries which were the result of action **initiated by Mr. Tillman**.

99. Chex Systems sold reports to at least two other entities containing the bogus Sea Mirror and Cash Fairy "hard" inquires, as well as at least one report sold to FactorTrust.

**Chex Systems Sold Report to FactorTrust without Permissible Purpose**

100. Chex Systems sold detailed information regarding Mr. Tillman to FactorTrust on February 7, 2017.

101. The data included Mr. Tillman's current and previous addresses, hundreds of data points about his checking account history, a number of payday loan inquiries, and driver's license information.

102. Chex Systems had no reasonable basis to believe that FactorTrust intended to use the information about Mr. Tillman in connection with any credit transaction regarding FactorTrust, since FactorTrust is a CRA and not a consumer lender, insurance underwriter, or any type of entity which would normally have a permissible purpose.

103. Chex Systems had no reason to believe any permissible purpose existed for FactorTrust to obtain Mr. Tillman's CBR, since nothing in the FCRA inherently allows one CRA to provide reports to another CRA, absent permissible purpose accorded to that CRA.

104. Mr. Tillman has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

## COUNT I
## VIOLATIONS OF THE FCRA – *Pro Style and Pellizzon only*

105.     Mr. Tillman incorporates Paragraphs 1 – 104 as if fully restated herein.

106.     Pro Style and Pellizzon violated **15 U.S.C. § 1681b(f)(1)** when they knowingly obtained CBRs from Chex Systems and Clarity without any permissible purpose by requesting and obtaining a CBR from Clarity and Chex Systems in connection with an alleged *credit transaction* between Mr. Tillman and Cash Fairy, when Mr. Tillman had no business or loan with Cash Fairy or any related entity, and Mr. Tillman never applied for or requested any credit or engaged in any other business transaction with Cash Fairy.

107.     Pro Style and Pellizzon **15 U.S.C. § 1681b(f)(2)** when it obtained the reports under false pretenses, falsely certifying that the reports were requested by Center Ice and Cash Fairy, implying the two were one-in-the-same, when it was actually Pro Style and Pellizzon who obtained and used the information therein.

108.     Assuming, *arguendo,* that Mr. Tillman had applied for a loan with Cash Fairy or similar, such loan would have been *void ab initio* due to Florida's usury laws, and Pro Style and Pellizzon still would not have permissible purpose to obtain a CBR.

109.     Mr. Tillman has suffered damages in that his personal, highly confidential information, such as his employment history, credit history, address, and Social Security number, have been obtained by a party who had no legitimate purpose for obtaining it.

110.     The conduct of Pro Style and Pellizzon further caused Mr. Tillman emotional distress in that he did not recognize the entity on his consumer disclosure who obtained his personal information and was forced to spend time procuring legal counsel.

111.     As a result of its conduct, Pro Style and Pellizzon are liable to Mr. Tillman pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Mr. Tillman respectfully requests this Honorable Court to enter judgment against Pro Style and Pellizzon for:

a.     The greater of statutory damages of **$1,000.00** per incident (for a total of **$2,000**) pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Mr. Tillman's actual damages for economic and non-economic injuries pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1);

b.     Punitive damages for intentional violation of the Act, pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1);

c.     Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

d.     Such other relief that this Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE FCRA – *Chex Systems only*

112.     Mr. Tillman incorporates Paragraphs 1 – 104 as if fully restated herein.

113.     Chex Systems violated **15 U.S.C. § 1681b(a)** when it provided reports to "CNTR ICE/CASHFAIRY" and "SEA MRR/GREEN STREAM" while having no reason to believe that these entities had a legitimate business need for the reports or intended to use the reports in connection with any review of account related to Mr. Tillman, or to make any firm offer of credit or insurance. Neither entity was really who

they claimed to be, and their stated permissible purposes were likewise works of fiction, something Chex Systems could have easily discovered, had it bothered to investigate any of the myriad red flags.

114.     Chex Systems violated **15 U.S.C. § 1681b(a)** when it provided reports to FactorTrust while having no reason to believe that FactorTrust had a legitimate business need for the report or intended to use it in connection with any review of account related to Mr. Tillman, or to make any firm offer of credit or insurance; and no objective, reasonable basis exists to conclude that another CRA would only use the report provided by Chex Systems for the purposes certified and no other.

115.     Chex Systems violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure the maximum possible accuracy of its reports by including promotional or "soft" inquires, *e.g.,* ones not initiated by Mr. Tillman, including at least two other lenders directly and to FactorTrust, for a total of at least three reports.

116.     Mr. Tillman has suffered damages in that his personal, highly confidential information, such as his employment history, credit history, address, and Social Security number, have been obtained by a party who had no legitimate purpose for obtaining it.

117.     Chex Systems' conduct was willful and intentional, or alternately, was done with a reckless disregard for its duties under the FCRA.

118.     As a result of its conduct, Chex Systems is liable to Mr. Tillman pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Mr. Tillman respectfully requests this Honorable Court enter judgment against Chex Systems for:

a. The greater of statutory damages of **$1,000.00** per incident (for a total of **$5,000.00**) pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Mr. Tillman's actual damages for economic and non-economic injuries pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. §1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

c. Such other relief that this Court deems just and proper

## DEMAND FOR JURY TRIAL

Mr. Tillman hereby demands a jury trial on all issues so triable.

Respectfully submitted on August 28, 2020, by:

**SERAPH LEGAL, P. A.**

/s/ Thomas M. Bonan
Thomas M. Bonan, Esq.
FBN: 118103
BGeiger@Seraphlegal.com
2002 E. 5th Avenue, Suite 104
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
tbonan@seraphlegal.com
Attorney for Plaintiff.

Exhibit List:
A – Screenshot from www.Cashfairy.com
B – Pro Style employment ad.
C – Mr. Tillman's Factor Trust report showing impermissible credit pull - Excerpt